//

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUL 2 2 2002

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| DORA CRUZ-GONZALES, | § | |
| Petitioner-Defendant, | § | |
| | § | |
| v. | § | (CA B-02-089) |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| Respondent-Plaintiff. | § | |
| (CR B-98-527) | § | |

**GOVERNMENT'S ANSWER AND MOTION FOR DISMISSAL
UNDER 8(a) OF THE RULES FOLL. 28 U.S.C. §2255**

1.

The Court ordered the government to respond to Petitioner's, Dora Cruz-Gonzales (hereinafter referred to as "Cruz"), motion pursuant to 28 U.S.C. §2255 motion filed on May 6, 2002 by July 22, 2002. Pursuant to this Court's order filed May 28, 2002, the government was also ordered to include the transcript of the plea record and sentencing with its response to Petitioner's §2255 motion. To date, the government has not received the re-arraignment transcript from the court reporter; however, the government will supplement its response with the re-arraignment transcript upon receipt of said transcript. The government moves to dismiss and, in the alternative, moves for summary judgment.

2.

The government denies each and every allegation of fact made by Cruz, except those supported by the record and those specifically admitted herein, and demands proof thereof.

3.

Cruz was indicted on October 13, 1998, in a two-count indictment charging her with conspiring to possess with intent to distribute more than 100 kilos of marihuana and possession with intent to distribute more than 100 kilos of marihuana (DOC 1)[1]. After making her initial appearance on the indictment, Cruz was released on bond (DOC. 7). On March 25, 1999, Cruz failed to appear at her Motions Hearing (DOC 27). Thereafter, Cruz failed to appear for her Final Pretrial Conference (DOC. 28). On April 13, 1999, Cruz was indicted for her failure to appear (PSR 25). On December 19, 2000, Cruz was again arrested (PSR 26). On February 1, 2001, Cruz plead guilty to the possession count (DOC 55, 56). On May 4, 2001, Cruz was sentenced to sixty (60) months imprisonment to be followed by a five-year term of supervised release for the possession count (B-98-52), and twenty-seven (27) months imprisonment to be followed by three years of supervised

_____

[1] The DOCument numbers reflect the docket sheet numbers from the original criminal case.

2

release for the failure to appear (Sent. P. 18).   The district court ordered the sentences of imprisonment to run consecutively, but the terms of supervised release to run concurrently (Sent. P. 21).   Her judgment was entered on May 18, 2001 (DOC. 66).   Cruz did not directly appeal her conviction or sentence.   On May 6, 2002, she timely filed the instant motion (DOC. 73).

4.

**ALLEGATIONS**

Cruz brings two basic complaints: (1) her attorney provided 'ineffective assistance';  and (2) the district court misapplied the Sentencing Guidelines.

A.  <u>Ineffective Assistance</u>

1.   Failed to investigate the case.

2.   Failed to show Cruz the plea agreement and indictment.

3.   Failed to advise Cruz of total amount of drugs which could be attributed to her.

4.   Failed to object to false statements (in the PSR), allowing her to be sentenced under 'false accusations'.

5.   Failed to argue for a five point reduction: two as "drug courrier" and one for early plea.

6.   Failed to object to erroneous 'relevant conduct' calculation.

B.   <u>Misapplication of the Sentencing Guidelines</u>

3

      1.     There was insufficient evidence to sustain the finding that she was an organizer.

2.    <u>Miscellaneous Complaints</u>

      1.     The district court ordered the sentences of imprisonment to run concurrently yet she is serving them consecutively.

      2.     The government failed to prove the statutory requirements of a Continuing Criminal Enterprise (hereinafter referred to as "CCE".)

5.

The Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §2255 (eff. April 24, 1996). Cruz is currently incarcerated. She seeks federal habeas corpus relief pursuant to 28 U.S.C. § 2255 from her conviction in the Brownsville Division of the Southern District of Texas. A §2255 motion "provides the primary means of collaterally attacking a federal conviction and sentence." *Jeffers v. Chandler*, 234 F.3d 277, 279 (5th Cir. 2000) (citation omitted). Relief under a §2255 motion "is warranted for errors that occurred at trial or sentencing." *Id.* He seeks relief from her conviction and sentence, and the relief sought under §2255 is appropriate .

4

6.

The underlying facts of the case reveal that Cruz was involved in arranging the transportation of large amounts of marihuana from Brownsville, Texas to Florida (PSR 8). A confidential informant (hereinafter referred to as "CI") related that in January and February 1997, he transported two such loads of between 80-100 pounds on behalf of Cruz (PSR 9). In June 1997, the CI flew to Browsville at Cruz' expense for the purpose of transporting an additional load. Although this load never materialized, Cruz advised she had 2,000 pounds to transport. The CI was given $1,000.00 and told to return to Florida. Within a day of his return to Florida, Cruz summoned the CI back to Brownsville to transport a portion of the 2,000 pounds (PSR 14). Cruz also met with and paid a female CI to accompany the original CI on the smuggling trip to reduce suspicion (PSR 17). On June 11, 1997, the CI received a car containing 286 pounds of marihuana from associates of Cruz (PSR 18, 19). Although the CI reported to Cruz that he had been stopped by police and the marihuana seized, (in fact, the CI had turned the loaded car over to the FBI) Cruz sent an individual to the CI's home to obtain paperwork evidencing the seizure (PSR 19). Later, Cruz requested such documents herself (PSR 21). Two weeks after the seizure, agents searched the "stash house" where the load vehicle had been

kept just prior to the delivery of the loaded vehicle to the CI on June 11. The search produced 804 pounds of marihuana (PSR 22).

Including the two 80 pound loads, the 286-pound seizure and the 804-pound seizure, Cruz' relevant conduct totals 1,250 pounds or 568 kilos of marihuana (PSR 23).

7.

The four grounds justifying relief under 28 U.S.C. §2255 are: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction to impose such sentence"; (3) that the sentence was in excess of the maximum authorized by law"; and (4) that the sentence is otherwise "subject to collateral attack". 28 U.S.C. §2255 (2000). Thus, motions to vacate sentences "may raise only constitutional errors and other injuries that could not have been raised on direct appeal that will result in a miscarriage of justice if left unaddressed." *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999)(citations omitted); *see Davis v. United States*, 417 U.S. 333, 346 , 94 S.Ct. 2298, 2305 (1974); *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 471 (1962).

**6**

A "'collateral challenge may not do service for an appeal.'" *United States v. Shaid*, 937 F.2d 228, 233 (5th Cir. 1991) (en banc) (quoting *United States v. Frady*, 456 U.S. 152, 167-168, 102 S.Ct. 1584, 1594 [1982]). Once the direct review process has been terminated, a presumption of finality attaches and the conviction is reviewable only on issues of constitutional or jurisdictional magnitude. *Shaid*, 937 F.2d at 232 (citing *Hill*, 368 U.S. at 428, 82 S.Ct. at 471). If a claim of constitutional or jurisdictional dimension is raised, it is reviewable for the first time on collateral attack only if the movant demonstrates cause for her procedural default and actual resulting prejudice. *Id.* On the other hand, "[n]on-constitutional claims that could have been raised on direct appeal, but were not, may not be asserted in a collateral proceeding." *United States v. Towe*, 26 F.3d 614, 616 (5th Cir. 1994).

To obtain post-conviction relief in a collateral attack, a defendant must show either: (1) cause excusing her procedural default and actual prejudice resulting from the alleged error, *see Frady*, 456 U.S. at 167-168, 102 S.Ct. at 1594; or (2) that he is actually innocent. *Shaid*, 937 F.2d at 232. "'Actual innocence' means 'factual innocence, and not mere legal insufficiency.'" *Bousley v. United States*, 523 U.S. 614, 623-624, 118 S.Ct. 1604, 1611-1612 (1998); *United States v. Torres*, 163 F.3d 909, 911 n.9 (5th Cir. 1999). To prove actual innocence, the petitioner "must

demonstrate that, in light of all the evidence, it is more likely than not that no [fact finder] would have convicted him." *Id.* (citations and quotations omitted). Cruz alleges that her attorney dissuaded her from appealing by threatening that she would face an increased sentence and advising her that an appeal had no chance of success. Ineffective assistance may satisfy the 'cause and prejudice' hurdles, if demonstrated. The government expects counsel to dispute each of Cruz' factual allegations.

8.

To establish ineffective assistance of counsel, the §2255 petitioner must allege and prove: (1) that her counsel's performance was deficient; and (2) that he was prejudiced by the deficiency. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *United States v. Walker*, 68 F. 3d 931, 934 (5th Cir. 1995); *see also Glover v. United States*, 531 U.S. at 198, 202-204, 121 S.Ct. 696, 700-701(2001)(discussing factors to consider in evaluating claim to demonstrate prejudice).

Under the first prong, counsel's performance is deficient if it is objectively unreasonable. *Walker,* 68 F.3d at 934. Under the second prong, prejudice is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different". *Strickland*, 466 U.S. at 694, 104 S.Ct. at

8

2068; *accord Glover*, 531 U.S. at 204, 121 S.Ct. at 701 (citing, *inter alia*, *Strickland)*.  Significantly, the petitioner making the claim of ineffective assistance must identify the acts or omissions that are alleged to have been the result of unreasonable professional judgment.  *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066.  Mere conclusory allegations are insufficient to raise a constitutional issue in a habeas case.  *United States v. Woods*, 870 F. 2d 285, 288 n.3 (5th Cir. 1989); *Schlang v. Heard*, 691 F. 2d 796, 799 (5th Cir. 1982); *Lockhart v. Fretwell*, 506 U.S. 364, 368, 113 S.Ct. 838, 842 (1993)("[A] criminal defendant alleging prejudice must show 'that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'")(quoting *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064).

A claim of ineffective assistance of counsel may be rejected based on an insufficient showing of prejudice, without inquiry into the adequacy of counsel's performance. *Micheaux v. Collins*, 911 F.2d 1083, 1090-1091 (5th Cir. 1990). The failure to prove both components of the *Strickland* test, either a deficient performance or actual prejudice, defeats an ineffective assistance claim.  *United States v. Abner*, 825 F.2d 835, 846 n. 18 (5th Cir. 1987).

a.  <u>At the plea stage</u>.

9

"Effective assistance" requires counsel to provide meaningful advice on the facts and law applicable to a plea agreement. *United States v. Hodges*, 259 F.3d 655, 659 (7th Cir. 2001); *United States v. French*, 719 F.2d 387, 389 (11th Cir. 1983). "While it need not be errorless, counsel's advice must be within the realm of competence demanded of attorneys representing criminal defendants". *Jones v. White*, 992 F.2d 1548, 1557 (11th Cir. 1993). In the context of a guilty plea, Cruz must demonstrate that, but for counsel's errors, she would not have plead guilty and would have gone to trial. *Id*. citing *Hill*, 474 U.S. at 59.

    b. <u>Sentencing errors</u>

In the context of sentencing errors, the petitioner must show that she was prejudiced by counsel's ineffective assistance. The prejudice prong, however, is more than just an outcome determinative test; it requires the petitioner to demonstrate that the result of the proceeding was fundamentally unfair or unreliable. "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 843-844 (1993); *Goodwin v. Johnson*, 132 F.3d 162, 174 (5th Cir. 1997).

**10**

Even if Cruz demonstrates that her counsel provided constitutionally infirm representation, Cruz must also demonstrate prejudice.   Generally, Cruz must establish that but for counsel's errors her sentence would be "significantly less harsh".   *Spriggs v. Collins*, 993 F.2d 85, 88 (5th Cir. 1993)(*Spriggs* sets out exception when "specific demonstrable enhancement" results, than any increase satisfies prejudice prong).   Accordingly,  within the "constrained discretion" of the Sentencing Guidelines, Cruz need not demonstrate that, absent the error, her sentence would have been "significantly less harsh", she must yet demonstrate prejudice.   "Authority does not suggest that a minimal amount of additional time in prison cannot constitute prejudice. Quite to the contrary, our jurisprudence suggests that any amount of actual jail time has Sixth Amendment significance".   *Glover v. United States,* 531 U.S. 198, 203, 121 S.Ct. 696, 700 (2001); *Daniel v. Cockrell*, 283 F.3d 697, 707 n.17(5th Cir. 2002)(suggesting that in 'constrained discretionary' Sentencing Guidelines, *Glover* and *Spriggs* exception applies).

c.  Appellate Errors

In   addition   to   establishing   counsel's   performance   was   objectively unreasonable, Cruz must show a reasonable probability that but for her counsel's unreasonable failure, she would have prevailed on her appeal.   *Briseno v. Cockrell*,

274 F.3d 204, 208 (5th Cir. 2001)("to demonstrate prejudice, the petitioner had to

show a reasonable probability that, but for her counsel's unreasonable failure, she

would have prevailed on her appeal.") (citation omitted); *United States v. Dovalina*,

262 F.3d 472 (5th Cir. 2001)(where court reviewed evidence to support conviction

and found that any error in appellate's counsel's failure to adequately brief an

appellate issue was not prejudicial to Dovalina's right to receive a fair trial and have

her case adequately reviewed).

9.

A.    <u>Ineffective Assistance of Counsel Claims</u>.

    1.  <u>Failure to investigate case</u>.

Although Cruz is entitled to "effective assistance" of counsel in investigating

available defense strategies and in determining whether to plead guilty, Cruz does

not explain how she was prejudiced by his counsel's "failure".    *Childress v.

Johnson*, 103 F.3d 1221, 1227 (5th Cir. 1997).  Cruz does not claim she is innocent.

Cruz' conclusory statement that counsel failed to investigate is without any

basis.  Cruz had allowed herself to be tape recorded giving instructions to underlings

to transport marihuana.  Over a half of a ton of marihuana was seized as a result of

the investigation.    There were eye witnesses available to testify regarding the

12

instructions they received from Cruz. To complicate this further, Cruz absconded.

Despite this overwhelming evidence, counsel fully investigated possible defensive

issues and possible mitigation. Counsel presented these issues to the district court

in the form of objections to the PSR (DOC 61) and a thoughtful and rational

argument to the district court at sentencing. Counsel was successful in obtaining

acceptance of responsibility, despite Cruz' flight. Her sentence was reduced from

the PSR recommended one hundred twenty-one (121) months to eighty-seven (87)

months. Her sentence was not due to deficiencies in counsel's performance, but

rather the overwhelming evidence against Cruz. Cruz does not suggest any ripe

avenues of investigation neglected by counsel or demonstrate how she was

prejudiced. The government expects counsel will provide further detail to the court

in this regard.

2.    Failed to show Cruz the plea agreement and indictment (still hasn't
      seen them).

This claim is suspect on its face as Cruz' signature appears on the plea

agreement and the undersigned believes the United States Magistrate Judge asks all

accused if they've received a copy of the indictment at their arraignment. The

government expects counsel will dispute this claim. Cruz fails to demonstrate how

she was prejudiced.

3.    Failed to advise Cruz of total amount of drugs to be attributed to her.

The government expects counsel to dispute this claim. Of course, no one would be able to definitively predict the outcome of the contested relevant conduct hearing at sentencing, the government believes that counsel explained the potential for Cruz to be attributed the 1,250 pounds.

4.    Failed to object to false accusations at sentencing

In the face of taped drug conversations by Cruz, highly corroborative of the reports by the CIs, rather than pursuing the simplistic and unsupportable tact of terming the CI's reports as "lies", counsel sought to explain Cruz' statements as "bluffing". This was the only rational defensive strategy open to Cruz. This decision was "strategic" and is not reviewable herein.

5.    Failed to argue for a five point reduction: two for "drug courier", one for early acceptance.

Of course, as an organizer, Cruz was ineligible for minor role adjustment. Factually, Cruz never transported drugs. She financed, hired and directed others to be the "couriers". Cruz obtained a three-level adjustment for acceptance. There is no further reduction available under the law or practice. Cruz fails to demonstrate that counsel's performance was unreasonable or that she was prejudiced by his performance.

14

6.    Failed to object to erroneous 'relevant conduct' calculation.

Cruz is mistaken, counsel filed objections to the PSR which triggered the contested 'relevant conduct' hearing at sentencing.   The objection was simply denied.

B.    Misapplication of the Sentencing Guidelines Claim.

1.    Application of the sentencing guidelines is not a cognizable claim under §2255.

Cruz' contention that the district court incorrectly applied the sentencing guidelines does not raise constitutional concerns which are cognizable under §2255. "Non-constitutional claims that could have been raised on direct appeal, but were not, may not be asserted in a collateral proceeding." *United States v. Payne*, 99 F.3d 1273, 1281 (5th Cir. 1996) (quoting *United States v. Vaughn*, 955 F2d 367, 368 [5th Cir 1992]).   Furthermore, technical application or misapplication of the sentencing guidelines does not raise a constitutional issue cognizable under §2255. *United States v. Segler*, 37 F.3d 1131, 1134 (5th Cir. 1994) (citing *United States v. Vaughn*, 955 F.2d 367, 368 [5th Cir. 1992]).   Moreover, since this claim involves an application of sentencing guidelines, which is not a constitutional issue, it should be dismissed.

2.  The trial court correctly applied the Federal Sentencing Guidelines.

15

Cruz claims that the court erred assessing a two-level adjustment for her organizer role. Section 3B1.1(c) mandates a two-level upward adjustment for an organizer. Cruz financed and recruited drug couriers and directed their illegal actions. She is a classic organizer of not only assets, but also other participants. *United States v. Giraldo*, 111 F.3d 21, 24 (5th Cir. 1997).

C.   Miscellaneous complaints

Cruz makes two additional complaints which are factually without basis. Cruz alleges the district court ordered her sentences of imprisonment to run concurrently. She is mistaken. They were ordered to run consecutively (Sent. P. 18, 21).

Cruz also makes reference to a deficiency of proof on her CCE charge. Cruz was never charged with CCE.

10.

No evidentiary hearing is necessary to resolve issues presented. *United States v. Samuels*, 59 F.3d 526, 530 and ns.16-17 (5th Cir. 1995)(citations omitted); *United States v. Bartholomew*, 974 F.2d 39,41-42 (5th Cir. 1992). Cruz alleges no facts which would warrant an evidentiary hearing under 28 U.S.C. §2255. Therefore, the government moves for dismissal, or in the alternative, summary judgment.

16

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, the government respectfully prays that Cruz' §2255 petition be dismissed or, in the alternative, be subject to summary dismissal.

Respectfully submitted,

MICHAEL T. SHELBY
United States Attorney

JAMES L. TURNER
Chief, Appellate Division
Assistant United States Attorney

Mark M. Dowd
Assistant U.S. Attorney
600 E. Harrison, # 201
Brownsville, Texas, 78520
Texas Bar No. 06070500
Federal Bar No. 9314
(956) 548-2554

17

```
 1              IN THE UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF TEXAS
 2                    BROWNSVILLE DIVISION


 3   _____
                                   )
 4   UNITED STATES OF AMERICA      )
                                   ) CRIMINAL ACTION NO.
 5   VS.                           ) B-98-527
                                   )
 6   DORA CRUZ GONZALES            )
     _____)
 7

 8

 9                    SENTENCING PROCEEDINGS
            BEFORE THE HONORABLE HILDA G. TAGLE
10                       MAY 4, 2001

11   APPEARANCES:

12   For the Government:        MRS. ELENA SALINAS
                                Assistant United States Attorney
13                              Brownsville, Texas

14   For the Defendant:         MR. JOE VALLE
                                Attorney at Law
15                              Brownsville, Texas

16   Transcribed by:            BRECK C. RECORD
                                Official Court Reporter
17                              600 E. Harrison, Box 16
                                Brownsville, Texas  78520
18                              (956)548-2510

19

20

21

22

23

24

25
```

Captured and Transcribed by Computer - Eclipse

1          THE COURT:  All right.  I'll now call for hearing the

2    cases set for sentencing and that begins with Cause No.

3    98-CR-527-01 and 99-CR-155-01, the United States of America

4    versus Dora Cruz Gonzales.  What says the Government.

5          AUSA SALINAS:  Elena Salinas for the Government, Your

6    Honor.

7          THE COURT:  Are you ready to proceed?

8          AUSA SALINAS:  Yes, Your Honor.

9          THE COURT:  What says the Defendant?

10         MR. VALLE:  Joe Valle for the Defendant, Your Honor.

11   We're ready to proceed.  We have objections to the PSI.

12         (At this time other cases were heard at which time the

13         following occurred, to wit:)

14         THE COURT:  Who did I say was five?  Mr. Valle?

15         MR. VALLE:  Yes, Your Honor.

16         THE COURT:  Dora Cruz Gonzales.  Mr. Valle, have you

17   reviewed the presentence report with your client?

18         MR. VALLE:  Yes, Your Honor.

19         THE COURT:  You may address The Court on your

20   objections.

21         MR. VALLE:  Your Honor, my client's at, according to the

22   PSI report, at a level 32.  She was not given acceptance of

23   responsibility and I don't think there's an objection from the

24   Government as far as receiving it, which would put her at a

25   level 29 from 87 to 108 months.  That's one objection I would

Captured and Transcribed by Computer - Eclipse

1  have.

2  The second objection is that the addition of 800 pounds of

3  marijuana as relevant conduct to her case which increases her by

4  two levels.  If Your Honor does not -- that is in Paragraph

5  No. 23 of the PSI.  The responses are addressed in that

6  paragraph.  My client, if she were -- I've asked her if I could

7  proffer what she would testify to, Your Honor, and she said

8  that's fine that I proffer what she would testify to regarding

9  those 800 pounds.  There's a tape recording that the Government

10  has where she is talking to a cooperating witness, a gentleman

11  by the name of Charles Wright, where she says that she has

12  2,000 pounds available.  I believe that the next day there's an

13  arrest or there's 800 pounds found in a stash house in Olmito,

14  Texas.  There's 800 -- there's some marijuana that is found in a

15  stash house and that is being assessed to her and she -- she

16  does not claim that.  She said that belongs to a gentleman by

17  the name of David Trejo.  David Trejo was later arrested -- he

18  and his wife were later arrested and charged with those pounds

19  of marijuana.  He is in Florida and she's willing to cooperate

20  with the Government and let them know that and so forth and that

21  is -- those are our two objections:  The acceptance of

22  responsibility and the additional two-level increase with the

23  800 pounds of marijuana that she has not claimed as hers.

24  THE COURT:  Okay.  Well, it looks like in Paragraph 22,

25  the connection was made because of the car being present at the

Captured and Transcribed by Computer - Eclipse

1    residence; is that right?  Who was wrote the PSR?

2          PROBATION OFFICER:  That's correct, Your Honor.  That

3    car -- the car in which the marijuana was found in the trunk of

4    the car was seen at the stash house in Olmito, Texas, where the

5    additional 804 pounds of marijuana was found.

6          THE COURT:  When was the most recent time that they had

7    seen the car at that address before the June 25th incident?

8          PROBATION OFFICER:  It was June the 11th, Your Honor.

9          THE COURT:  And the tape-recorded conversation occurred

10   when?

11         PROBATION OFFICER:  I'm sorry?

12         THE COURT:  The tape-recorded conversation where there's

13   a discussion about her having 2000 pounds.

14         MR. VALLE:  June 8th, I believe.

15         PROBATION OFFICER:  June 8th, Your Honor.

16         MR. VALLE:  She didn't own the Cadillac either, Your

17   Honor.

18         THE COURT:  Well, okay, I just want to know what says

19   the Government on this factual issue?

20         AUSA SALINAS:  Your Honor, would you like me to address

21   the acceptance of responsibility first?

22         THE COURT:  No, the relevant conduct.

23         AUSA SALINAS:  Yes, Your Honor.  It is the Government's

24   position, Your Honor, that the 804 pounds found at the stash

25   house should be attributed to the Defendant because of the fact

Captured and Transcribed by Computer - Eclipse

1   that a conversation -- a recorded conversation took place in

2   which the cooperating witness is speaking to the Defendant on

3   June the 8th, 1997, in which she makes reference to -- he

4   states, "Dora told me" -- he is telling Dora what he told some

5   other individuals and his words are, "Dora told me that she had

6   2,000 pounds and I told her I'd take trips" and then he uses a

7   bad word and Mrs. Cruz indicates, "That's right."  And later in

8   the conversation, the CW again says, "I'll just go down there

9   and do a load and come back and then I'll get her and she'll go

10  with me on other two," indicating that the Defendant had

11  indicate that she wanted the driver to have a female passenger

12  so it wouldn't look as suspicious.  And again in making

13  reference to additional trips, it would mean that the 2000-pound

14  load would be broken down into smaller trips.  And again, the

15  Defendant indicates "all right" at that instance.

16      And it is also the Government's position because of the fact

17  that the Defendant showed up at a motel in Brownsville in a

18  white Cadillac that was later identified as the same white

19  Cadillac the two Hispanic individuals arrived in when they spoke

20  to the driver, and then later the same white Cadillac is taken

21  to the motel where it is then given to -- if I may backtrack --

22  that white Cadillac is -- surveillance follows it to the stash

23  house on two different occasions and then on a third occasion

24  when the load actually takes place, a van and the white Cadillac

25  are taken to the motel.  The driver gets into the white



Captured and Transcribed by Computer - Eclipse

1    Cadillac, the individuals that had been driving the Cadillac get

2    into the van, and the van again goes to the stash house.  And

3    because of these reasons, Your Honor, the Government

4    respectfully requests that the 804 pounds be assessed against

5    the Defendant.

6              THE COURT:  I guess I'm trying to determine --

7              AUSA SALINAS:  The time period?

8              THE COURT:  -- what -- because the house was searched on

9    June 25th --

10             AUSA SALINAS:  That is correct.

11             THE COURT:  -- and what is the most recent, I guess,

12   contact or information regarding connecting her to this house,

13   you know, that had the 800 pounds.

14             AUSA SALINAS:  Unfortunately, Your Honor, the agents did

15   not get a search warrant the moment of the arrest once the

16   narcotics were delivered which would be June 11th of 1997.  So,

17   what occurred is that on June 11th was the last incident in

18   which agents followed a van to the stash house, which was the

19   same day of the delivery, and then the only other thing that we

20   have is that the marijuana that was packaged into the Cadillac

21   was in black Sony bags.  And at the stash house, they found

22   marijuana also packaged in black Sony bags.  But as far as from

23   June 11th to June 25th, when the actual arrest takes place, Your

24   Honor, of the 804 pounds and the individuals there at that

25   residence, there is no contact by agents, there's no search

Captured and Transcribed by Computer - Eclipse

1    warrant or any indication or any surveillance that I'm aware of.

2              THE COURT:  Tell me what do you mean by the Sony bags,

3    what's that?

4              AUSA SALINAS:  Black Sony bag is just simply like a

5    black nylon bag in which they had placed marijuana when they hid

6    it in the vehicle.

7              THE COURT:  Okay.  Black nylon, like, are you talking

8    about black trash bags or black -- I'm not sure what a Sony bag

9    is still.

10             AUSA SALINAS:  Your Honor, I recall reading in the

11   report that it is simply a -- if I may quickly look that section

12   up.  If I may address The Court, Your Honor.  It says, "Many of

13   the marijuana bricks were packed in a nylon bag with the word

14   Sony on it."

15             THE COURT:  Okay.

16             AUSA SALINAS:  In speaking with the agent and the

17   previous agent that handled the case, he had indicated and

18   Mr. Kristin Rosenbeck had also indicated that the same type of

19   bag was found at the stash house.

20             THE COURT:  Okay.  Mr. Valle, anything you wish to say?

21             MR. VALLE:  Your Honor, this 2,000 pounds that she spoke

22   to this Charles Wright about, she was just bluffing like Charles

23   Wright was bluffing her and she didn't have access to any 2000

24   pounds.  David Trejo is the gentleman that owned the marijuana.

25   She was not the owner of that house.  Never had they shown that



Captured and Transcribed by Computer - Eclipse

1    he's been the owner.  As a matter of fact, a gentleman by the

2    name of Jesus Pena, I believe, comes back as the owner of that

3    house, who, I believe about three or four months ago was

4    sentenced in Judge Vela's court in another marijuana case.  But

5    these 800 pounds, my client said, "Look.  This is not mine.  I

6    am guilty of 286 pounds that they're causing me of, but these

7    800 pounds they found days later, that's David Trejo's and

8    that's all I can say to them.  There's no way that I owned that

9    marijuana."

10              THE COURT:  All right.  Anything else from Probation?

11              PROBATION OFFICER:  No, Your Honor.

12              THE COURT:  Let me try to unravel this a little bit.

13    And I'm looking at Paragraph 16.  Is the residence referred to

14    in that paragraph on 803 in Olmito the same one where the 800

15    pounds were found?

16              AUSA SALINAS:  Yes, Your Honor.

17              MR. VALLE:  Paragraph 16?

18              THE COURT:  Yes.

19              PROBATION OFFICER:  Yes, Your Honor, I believe it is the

20    same residence.

21              MR. VALLE:  Your Honor, may I approach the bench?

22              THE COURT:  Yes.

23              MR. VALLE:  My client simply asked me to tender a letter

24    to The Court.

25              THE COURT:  Has a copy been provided to the Government?

1          MR. VALLE:  No, Your Honor.

2          AUSA SALINAS:  Your Honor, may I approach?

3          THE COURT:  Yes.

4          AUSA SALINAS:  I don't know if this may help you.  It is

5     a time line that was prepared and maybe with the dates and

6     information that would be quicker and I'll provide Mr. Valle a

7     copy.

8          MR. VALLE:  Your Honor, can she read this letter for the

9     record?  She's asking.

10          THE COURT:  All right.

11          INTERPRETER:  Your Honor, do you wish me to read it into

12     the record?

13          THE COURT:  Yes.

14          INTERPRETER:  "I'm writing this letter and I'm hoping

15     I'm not causing you any annoyance with these words and I'm

16     hoping I'm not offending you in any matter.  I'm apologizing to

17     you and to this country for the mistake that I made when I

18     didn't appear in court.  I wish you'd give me a chance to tell

19     you what the reason was.  I know it wasn't justified, but I'd

20     like you to listen to me.  The reason why I didn't come to court

21     was because I was afraid.  Yes, Judge, I was very afraid.  I was

22     afraid of losing my children.  They're the only reason for me

23     living because I'm a mother and I've tried to do everything

24     possible so that they may be happy.  I've been married since I

25     was 17 and I had my first son at the age of 18.  When I got

1   married, I continued going to high school and before I graduated

2   I had my son.  Afterwards, I got a divorce from my husband and I

3   was living on my own with my son, but then I was pregnant with

4   my second child who was a little girl, a darling little girl,

5   who now is six years old and my son is nine years old.  But when

6   I was pregnant with my daughter, I was going to school to learn

7   a trade, because the Government didn't want to give me any

8   assistance as far as my children were concerned and my

9   ex-husband gave me part-time work in a trailer park which he

10  has, but what he wanted was for me to suffer or to be -- get

11  into problems so I'd go back with him.  But I wanted to show him

12  that I could earn my own living and help my children without his

13  help or without the Government's help.  And look, it is just

14  that look what a mess I'm in, Your Honor.

15      Now I'm paying for this because of my stupidity.  I wish you

16  would please pardon me and give me a chance to show you that I'm

17  not such a bad person that I'm being accused of being.  I'm just

18  an unwed mother or single mother who was trying to get ahead and

19  help her children with pride.  And I swear, Your Honor, if it

20  hadn't been for my stupidity of paying attention or to what

21  Charles Wright was saying, the CI who's from the Government was

22  telling me, I wouldn't have gotten in this mess.  And I believed

23  him, but I didn't think I'd have to pay such a great price for

24  this.  And more than anything, my family's going to have to pay

25  a price for this.  And now I see the seriousness of all these

Captured and Transcribed by Computer - Eclipse

1    things and I'm truly sorry, Your Honor.  I don't have enough

2    words to express my apologies to you and to Your Honor and The

3    Court.  And I've lost everything, Your Honor:  My children, my

4    studies, my school, and my dignity as a Christian.

5        I'm not asking you to feel sorry for me.  The only thing I'm

6    asking you and God is to give me another chance to be with my

7    children and show everyone what they're saying about me is not

8    true.  But these four and a half months that I've been locked up

9    have been really long and painful for me.  Pardon me, Your

10   Honor, if I'm so bold as to write you this, but in this letter

11   truly -- but in court I realize that you probably wouldn't have

12   enough time to listen to me and also because I'm a little shy

13   and I don't really like to speak before Your Honor.

14       Well, Your Honor, that's all that I have to say in this

15   letter and please, Your Honor, give me another chance.  It

16   doesn't matter to me if you give me a hundred years of

17   probation.  The only thing I'm asking for is another chance to

18   be with my children.  I'm not doing it for me, Your Honor; I'm

19   doing it for my children.  I hope I have not caused you or

20   annoyed you in sending you this picture of my children, but I'm

21   showing it to you from the bottom of my heart.  They're the only

22   thing I have in this life.

23       Well, Your Honor, again, I'm apologizing to you and closing

24   this letter.  I hope I have not caused you any inconvenience

25   with my letter.  Take care.  May God bless you.



Captured and Transcribed by Computer - Eclipse

1      Yours truly, Dora Cruz Gonzales.

2          THE COURT:  Looks like in the time line that

3  Mrs. Salinas provided me that on May 30th, 1997, the person who

4  was stopped in Victoria by DPS indicated that Dora Cruz

5  routinely smuggled 2000 pounds at a time, split into smaller

6  loads and that she usually paid the drivers $5,000 per trip plus

7  expenses.

8          Thereafter, again, on June 3rd, I'm assuming that the same

9  person that was speaking on May 30th has said that when she met

10  or when that person met Dora Cruz in a motel room in

11  Brownsville, that the Defendant stated that there were 2000

12  pounds of marijuana that she wanted transported to Florida.  And

13  I'm not sure whether the -- yes, it looks like the transcript of

14  June 7th and 8th is the one that indicates there was an

15  acknowledgement by Cruz that said had 2000 pounds of marijuana

16  awaiting transport.  And so if that's the case, it doesn't sound

17  to me like she had no connection with that 800 pounds found in

18  that stash house in Olmito; she just happened not to have it on

19  her or she was not there at the time that the house was

20  searched.

21          MR. VALLE:  Your Honor, there's never anything to

22  connect her to the 800 pounds other than the CI and her calling

23  these bluffs.  She tells me that when she said that there's 2000

24  pounds she is bluffing Charles Wright just like Charles Wright

25  was bluffing her to come into this deal.  She was just simply

1    getting him to David Trejo and having David Trejo give him the

2    marijuana.  But she never owned 2000 pounds of marijuana.  That

3    white Cadillac wasn't hers.  And that's never been proven that

4    it was hers.  As a matter of fact, she tells me that David Trejo

5    is the one that was buying that white Cadillac or this CI and I

6    don't know what else to say, Your Honor, other than just -- it's

7    never been shown that 2000 pounds ever existed other than these

8    800 pounds and there's a big difference.

9         THE COURT:  Well, it sounds like she was -- I mean,

10   there's no objection to the assessment of her exercising

11   managerial or supervisory role and I think that -- you know,

12   that role is consistent with somebody who has that kind of

13   quantity available to her, whether, you know, you can

14   characterize it as she being the owner versus somebody who is

15   knowledgeable and, you know, knows what's going on and she just

16   happens to not have been at the place where the marijuana was

17   found on June the 25th does not mean that she didn't have some

18   kind of a joint ownership with David Trejo of marijuana or that

19   she was not somebody who was, like I said, had the means by

20   which to make that quantity available for transport, given these

21   statements.  And so the objection to the assessment of -- or

22   including that as relevant conduct is overruled.

23        Now, what was the other thing?

24        MR. VALLE:  For the record, she wanted to make a comment

25   about that.

1      THE DEFENDANT:  Concerning this 2000 pounds, nothing

2  ever happened.  And he always said that he was going to pay me

3  $5,000.  He told me to prove it with drugs.  But that day when

4  he came back to Brownsville, there was never any trade, any

5  exchange.  I was telling him a lie and lying to him about the

6  2,000 pounds so that he would leave me alone.  And then he

7  returned and he was really mad at me because he told me that I

8  had lied to him.  Then he told me he had someone else here in

9  Brownsville that he didn't have anybody to interpret for him.

10  And then he said in order to help me out that he would help me

11  out with money so I wouldn't get into problems.  He said that I

12  wasn't going to play a big role in this.  The only thing that he

13  wanted was that I would serve as his interpreter so that he

14  could do this transaction.  I never thought that I would suffer

15  such great consequences as far as a sentence for serving as an

16  interpreter.

17      THE COURT:  I don't know, I was kind of surprised to

18  read about your husband being in prison, your mother being in

19  prison especially for drugs.  You know, I'm not saying that

20  their conduct is something I'm attributing to you, but it

21  certainly gives me reason to doubt what you're saying about

22  your -- you know, you just being an interpreter or basically

23  helping to try to get business.  Or I mean I don't know it

24  doesn't make any sense the explanation that you're giving.  So,

25  again, the objection to the assessment of the 800 pounds as

Captured and Transcribed by Computer - Eclipse

1  relevant conduct is overruled.

2      Anything else?

3      MR. VALLE:  No, Your Honor, just that you consider

4  giving her the acceptance of responsibility, three points which

5  would put her at --

6      THE COURT:  Well, then, you know, I can't -- seems to me

7  that to give her credit for acceptance of responsibility would

8  fly in the face of the fact that she did not appear at the

9  hearing and they had to indict her for bond jumping; so that

10  objection's also overruled.

11     All right.  As far as the guideline range that it looks like

12  it's 121 months?

13     THE DEFENDANT:  I just want you to know I had nothing to

14  do with the 800 pounds.  Why can't I good to trial to prove that

15  everything they're telling me or saying about me is a lie?

16     THE COURT:  Well, see, I took your plea on February 1st

17  and I told you that if -- I mean that I was not bound to follow

18  any recommendation made by the Government and that if you were

19  not happy with the report of my decision that you wouldn't be

20  able to withdraw your plea of guilty on that account.

21     THE DEFENDANT:  I didn't know anything about this until

22  I read all this, all the lies that they were saying about me.

23     THE COURT:  Let me look at the fact summary sheet.  Can

24  I have that file that shows that?  I tell you what, let me

25  recess momentarily and let me ask the Clerk to find that for me.



Captured and Transcribed by Computer - Eclipse

1    Thank you.

2         (Recess taken.)

3         THE COURT:  All right.  Mr. Valle?

4         MR. VALLE:  Yes, Your Honor.  My client wants me to

5    reurge the three points for acceptance of responsibility and

6    consider that.

7         INTERPRETER:  Your Honor, the Interpreter would like to

8    say something.  I would like to correct the record concerning

9    the defendant's statement to The Court at the beginning of her

10   allocution.  The Defendant said the following:  "The CI told me

11   that he'd get 10,000 for the trip and that I would get 5,000 but

12   that my role in all of this was not going to be major.  I was

13   just going to help him out by being his interpreter."

14        THE COURT:  Okay.

15        MR. VALLE:  That's it, Your Honor.

16        THE COURT:  All right then.  What I -- upon discussing

17   this with the Government and the defense attorney, I will go

18   ahead and give her credit for acceptance of responsibility at

19   the urging of the Government.  But as far as the relevant

20   conduct, your objection to that finding by The Court is

21   overruled, Mr. Valle.

22        MR. VALLE:  Yes, Your Honor.

23        THE COURT:  Madam, is there anything you wish to say to

24   The Court before you're sentenced?

25        THE DEFENDANT:  Well, if you think that's the time that

Captured and Transcribed by Computer - Eclipse

1    I have to serve, well, I'll do it.  The only thing is I don't

2    think I'm deserving of that -- of that sentence, but that I

3    accept it.

4            THE COURT:  All right then.  Tell me -- if the range --

5    guideline provision range would be 97 -- beginning at 97?

6            MR. VALLE:  Level -- offense level 29, 87 to 108.

7            THE COURT:  87.  I'm sorry, I --

8            MR. VALLE:  87 to 108.

9            PROBATION OFFICER:  That's correct, Your Honor, 87 to

10   108 months.

11           THE COURT:  All right.  You broke down the recommended

12   sentences for these two cases, the 98 case is 90 months and then

13   the 99 case to be 31 months.  Tell me how you would recommend

14   that I break it up this time?

15           PROBATION OFFICER:  Your Honor, The Court would be free

16   to fashion the sentence any way it would see fit, although the

17   drug case does have a five-year mandatory minimum.

18           THE COURT:  Okay.  60 months.  So if I were to go with

19   87, it would be something like 60 and 27?

20           PROBATION OFFICER:  That's correct, Your Honor.

21           THE COURT:  Madam, anything else?

22           THE DEFENDANT:  No.  Just my apologies and forgive me

23   for what I did.

24           THE COURT:  Very well then.  In Cause No. 98-CR-527, The

25   Court, pursuant to the Sentencing Reform Act, sentences you to a

Captured and Transcribed by Computer - Eclipse

1   term of imprisonment of 60 months.  And in Cause No. 99-CR-155,

2   The Court hereby sentences you to a term of imprisonment of 27

3   months, those sentences to run consecutive to each other for a

4   total of 87 months.  Upon release from imprisonment, you shall

5   be placed on supervised release in Cause No. 99-CR-155 for a

6   period of three years and a term of supervised release of five

7   years in Cause No. 98-CR-557.  During this period of supervised

8   release, you shall comply with all standard and mandatory

9   conditions of supervised release which shall include that you

10  are not to commit another federal, state, or local crime and

11  shall comply with all other standard and mandatory conditions

12  which shall include that you are not illegally possess a

13  controlled substance and shall refrain from any unlawful use of

14  a controlled substance.  You're not to possess a firearm or

15  other destructive device and you are to be evaluated for

16  participation in a program, inpatient or outpatient, for the

17  treatment of drug and/or alcohol, addiction, dependency or

18  abuse.

19      The Court finds that you do not have an ability to pay a

20  fine and therefore waives the imposition of a fine.  The Court

21  will order that you perform 150 hours of community service as

22  approved by the Probation Department to be completed within the

23  first two years of your supervised release.  The Court does

24  impose a special assessment of $100 in each cause number for a

25  total of $200.


Captured and Transcribed by Computer - Eclipse

1       Madam this sentence is in conformance with the Sentencing

2   Reform Act of 1984 and as justification for this sentence The

3   Court adopts the findings in the presentence report and that

4   includes the finding by The Court as to relevant conduct of

5   804 pounds.

6       The law does provide that you have a right to appeal your

7   sentence and you can do so even though you are indigent, but you

8   must give notice of that intention within 10 days.

9       Anything further?

10      MR. VALLE:  Yes, Your Honor, just two things:  That Your

11  Honor recommend that she participate in a drug abuse treatment

12  program in a facility.  There's an indication of cocaine abuse.

13      THE COURT:  So ordered.

14      MR. VALLE:  And that if Your Honor could recommend that

15  she be placed in a facility in Florida where her family is.

16      THE COURT:  All right.  I'll make that recommendation.

17      Madam, I really know that your sincere in your desire to be

18  with your family and your concern for them.  This is a long time

19  for a child to be away from a parent, especially the one who

20  raised them.  However, I just want you to understand that by the

21  example that you are making of yourself that you're telling your

22  children that it is okay to do this kind of thing.  I mean,

23  given that your mother is in prison for similar conduct --

24      INTERPRETER:  My mother's not in prison.

25      THE COURT:  Has she been in prison because of drugs?



Captured and Transcribed by Computer - Eclipse

```
 1          THE DEFENDANT:  She was there for a time.  She's already
 2    finished her --
 3          THE COURT:  Well, the -- my concern is still the same,
 4    that, you know, your mother has been in prison for drugs, your
 5    husband -- I'm assuming that's the father of your children --
 6    has been or is in prison for drugs, you're going to be in prison
 7    for drugs.  I mean, what are you telling your children about
 8    what's okay to do with their life?  Do you understand that?
 9          THE DEFENDANT:  I never did drugs prior to this.  This
10    is first time that I've been convicted of this.  Why am I having
11    to pay for everybody's mistakes.
12          THE COURT:  I'll telling you -- I'm not telling that I'm
13    taking your mother's conduct into account or your husband's.
14    I'm just telling you that as far as your children are concerned,
15    they've seen that there's three adults whom they got to be very
16    close to that are doing this kind of stuff and surely they're
17    going to think it is okay for them to do, as well.  I mean, if
18    you can't see that, then you are blinding yourself and that's
19    certainly -- I feel sorry for your children if you refuse to
20    believe and understand what I'm trying to tell you about what
21    you are telling your children by your conduct that it is okay to
22    do.
23          All right.  Again, the law does provide that you have a
24    right to appeal your sentence and you can do so even though you
25    are indigent, but you must give notice of that intention within
```

Captured and Transcribed by Computer - Eclipse

1    10 days.

2          PROBATION OFFICER:  Begging The Court's indulgence.  On

3    the supervised release term, are those to run consecutive or

4    concurrent to each other?  You ran the sentences consecutive for

5    the imprisonment range, but you didn't utter anything as far as

6    the terms of supervised release.

7          THE COURT:  Is there a mandatory thing about that or can

8    they be concurrent?

9          PROBATION OFFICER:  Your Honor, they're concurrent.

10          THE COURT:  I'll order concurrent.

11          AUSA SALINAS:  Government moves to dismiss remaining

12    count.

13          THE COURT:  Motion's granted.

14

15

16

17

18

19

20

21

22

23

24

25

Captured and Transcribed by Computer - Eclipse

1    UNITED STATES DISTRICT COURT        *

2

     SOUTHERN DISTRICT OF TEXAS          *
3

4        I, BRECK C. RECORD, Official Court Reporter, United States

5    District Court, Southern District of Texas, do hereby certify

6    that the foregoing is a correct transcript from the record of

7    proceedings in the above-entitled matter.

8        I certify that the transcript fees and format comply with

9    those prescribed by the Court and Judicial Conference of the

10   United States.

11

12   _6/28/02_                    _Breck Record_

13                                BRECK C. RECORD,
                                  Official Court Reporter
14                                United States District Court
                                  Southern District of Texas

15

16

17

18

19

20

21

22

23

24

25


                Captured and Transcribed by Computer - Eclipse

## CERTIFICATE OF SERVICE

I, Mark M. Dowd, Assistant United States Attorney,  certify that a true and correct copy of the above document has been served by placing same in United States mail, postage prepaid, today, JULY 22 , 2002, addressed to:

Jeanette Mercado
Attorney for Petitioner
P.O. Box 532541
Harlingen, TX 78553

_____
Mark M. Dowd
Assistant United States Attorney

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| DORA CRUZ-GONZALES, | § | |
| Petitioner-Defendant, | § | |
| | § | |
| v. | § | (CA B-02-089) |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| Respondent-Plaintiff. | § | |
| (CR B-98-527) | § | |

### RECOMMENDED ORDER

The Court, having considered Cruz' motion to vacate sentence under 28 U.S.C. §2255 and the government's answer, concludes that dismissal is warranted.

The complaints concerning attorney Joe Valle are factually and legally unfounded.

Furthermore, no prejudice is shown. Dismissal is warranted and recommended.

DONE this _____ day of _____, 2002 at Brownsville, Texas.


_____
UNITED   STATES   MAGISTRATE   JUDGE